UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. _____

MICHAEL BENTON, HEATHER DREVER,
AMY KNIGHT, KIMBERLY McCLAIN,
CRAIG PERRY, MICHELE POLLARD,
RANIA PRICE, and AMANDA TEEHAN,

       Plaintiffs,

v.

ROYAL CARIBBEAN CRUISES LTD.,
DOLPHIN COVE LTD., JAMAICA COOPERATIVE
AUTOMOBILE AND LIMOUSINE TOURS LIMITED, and
XYZ CORPORATION(S),

       Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

The Plaintiffs hereby sue Defendants and allege as follows:

### JURISDICTIONAL AND PRELIMINARY ALLEGATIONS

1. The Plaintiff, MICHAEL BENTON, is a citizen of North Carolina.

2. The Plaintiff, HEATHER DREVER, is a citizen of Connecticut.

3. The Plaintiff, AMY KNIGHT, is a citizen of Connecticut.

4. The Plaintiff, KIMBERLY McCLAIN, is a citizen of Michigan.

5. The Plaintiff, CRAIG PERRY, is a citizen of Florida.

6. The Plaintiff, MICHELE POLLARD, is a citizen of Illinois.

7. The Plaintiff, RANIA PRICE, is a citizen of North Carolina.

8. The Plaintiff, AMANDA TEEHAN, is a citizen of Michigan.

Lipcon, Margulies, Alsina & Winkleman, P.A.

9.   Defendant, ROYAL CARIBBEAN CRUISES LTD. ("RCCL"), is a foreign entity with its principal place of business in Florida.

10. Defendant, DOLPHIN COVE LTD., upon information and belief, is an entity based in Jamaica.

11. Defendant, JAMAICA COOPERATIVE AUTOMOBILE AND LIMOUSINE TOURS LIMITED, upon information and belief, is an entity based in Jamaica.

12. Defendant, XYZ CORPORATION(S), is included to represent the owner(s) and/or operator(s) of the subject excursion, insofar as such entity has a different name than the named Defendants herein and/or additional entity(ies) contributed to the ownership and/or operation of the subject excursion.  XYZ CORPORATION(S) is (are) also used in a plural form.  In the event discovery reveals that a different and/or additional entity(ies) was(were) involved in the ownership and/or operation of the subject excursion, the legal name(s) of the entity(ies) will be substituted for XYZ CORPORATION(S).

13. The matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332.  In the event diversity jurisdiction does not apply to any or all of the Plaintiffs, then this matter is brought under the admiralty and maritime jurisdiction of the Court.

14. The causes of action asserted in this Complaint arise under the General Maritime Law of the United States.

15. At all times material hereto, Defendants, personally or through an agent:

   a.   Operated, conducted, engaged in or carried on a business venture in this state and/or county or had an office or agency in this state and/or county;

   b.   Were engaged in substantial activity within this state;

   c.   Operated vessels in the waters of this state;

d.  Committed one or more of the acts stated in Florida Statutes, §§ 48.081, 48.181 and/or 48.193;

e.  The acts of Defendants set out in this Complaint occurred in whole or in part in this county and/or state.

f.  Defendants were engaged in the business of providing to the public and to the Plaintiffs in particular, for compensation, vacation cruises aboard the vessel, the *Independence of the Seas*.

16. Defendants are subject to the jurisdiction of the Courts of this State.

**The Excursion Entities' continuous and systematic general business contacts with Florida satisfy a finding of general jurisdiction under Florida Statute § 48.193(2).**

17. At all times material hereto, Defendants, DOLPHIN COVE LTD., JAMAICA COOPERATIVE AUTOMOBILE AND LIMOUSINE TOURS LIMITED and/or XYZ CORPORATION(S) (collectively referred to as "the Excursion Entities" in a manner so as to retain each Defendant's separate and individual liability in the event said Defendants are severed), are the tour operators of an excursion entitled, "Dolphin Cove and Dunn's River Falls," in Jamaica.

18. At all times material hereto, the Excursion Entities have engaged in substantial and not isolated activity within this state, including, but not limited to: a) reaching out to cruise lines in Florida and establishing long-term partnerships with them; b) deriving a substantial portion of their revenues from their business with Florida-based cruise lines; c) periodically traveling to Miami to meet with cruise line executives for purposes of maintaining the business relationships and/or obtaining new business; d) procuring insurance through companies in Florida; e) maintaining Florida entities as "Agents of Record" for insurance purposes; f) agreeing to insure and indemnify entities in Florida; g) signing premium financing agreements with Florida entities in order to obtain a loan to pay for liability insurance premiums; h)  buying parts and/or supplies from Florida-based

suppliers to operate their excursions; i) signing powers of attorney and/or appointing attorneys-in-fact in Florida to carry out their Florida operations; j) participating in cruise industry trade shows in Miami (e.g., Seatrade); and/or k) maintaining active membership in Florida Caribbean Cruise Association, based in Florida

19. At all times material hereto, the Excursion Entities have been in the business of providing excursions to cruise line passengers in Jamaica through Florida-based cruise lines, including Carnival, Royal Caribbean, Celebrity and/or NCL.  In entering into contracts with these Florida-based cruise lines, the Excursion Entities agree to the exclusive jurisdiction of courts in Florida. Additionally, by being under contract with the Florida-based cruise lines, the Excursion Entities receive the benefit of the cruise lines' advertising and promotional efforts.

20. At all times material hereto, the Excursion Entities' arrangement with the Florida-based cruise lines and the circumstances of this case are markedly different than those at issue in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014).  Herein, unlike *Daimler*, the Plaintiffs (all U.S. citizens and one Florida resident) are suing a Florida-based cruise line (RCCL) for injuries sustained while participating in an excursion operated by agents of the cruise line (the Excursion Entities) -- agents set up almost exclusively to do business with cruise lines (most of which are based in Florida). Further unlike *Daimler*, RCCL is "at home" in this jurisdiction because RCCL maintains its principal place of business in Florida.  Additionally, under *Daimler*, the Excursion Entities are also deemed "at home" in this jurisdiction by their direct and indirect contacts with Florida (through the Florida-based cruise lines).

### The Excursion Entities' activities in Florida also satisfy a finding of specific jurisdiction under Florida Statute § 48.193(1)(a).

21. At all times material hereto, the Excursion Entities' activities in Florida also satisfy the specific jurisdiction provision of Florida Statute § 48.193(1)(a), by acts that include, but are not

limited to, a) reaching out to Florida-based cruise lines, insurers, cruise industry associates and/or premium financing companies for purposes of operating, conducting, engaging in, or carrying on a business or business venture in this state; and/or b) contractually agreeing to indemnify Florida-based cruise lines (entities mostly located in Miami and Ft. Lauderdale) for any harm resulting to cruise passengers, thereby insuring a "person, property, or risk located within this state."

### The Excursion Entities' activities in Florida also satisfy a finding of jurisdiction under Fed. R. Civ. P. 4(k).

22. At all times material hereto, the Excursion Entities are also subject to jurisdiction pursuant to Federal Rule of Civil Procedure 4(k)(2) because a) the instant maritime tort claims arise under federal law; b) the Excursion Entities are not subject to jurisdiction in any state's courts of general jurisdiction; and c) exercising jurisdiction over the Excursion Entities is consistent with the United States Constitution and laws based on the Excursion Entities' minimum contacts with the United States as a whole such that the maintenance of this lawsuit does not offend traditional notions of fair play and substantial justice.  These minimum contacts are set forth in the above allegations, and include, but are not limited to, the Excursion Entities' location and operation in the United States, as well as marketing, promoting and selling tickets for its shore excursions in the United States directly and/or through cruise lines as their agents located all over the United States.

### FACTS COMMON TO ALL COUNTS

23. At all times material hereto, RCCL owned, operated, managed, maintained and/or controlled the vessel, the *Independence of the Seas*.

24. On or about January 14, 2016, the Plaintiffs were paying passengers aboard the *Independence of the Seas* vessel, which was in navigable waters.

25. After booking the subject cruise aboard the *Independence of the Seas*, RCCL sent the Plaintiffs promotional material, which provided information and descriptions of shore excursions, including an excursion entitled, "Dolphin Cove and Dunn's River Falls."

26. In addition to the promotional material sent to the Plaintiffs, RCCL's website contained information and descriptions of shore excursions, including the subject excursion.  Tickets for shore excursions, including the subject excursion, were also available for sale on RCCL's website.

27. Once the Plaintiffs were aboard the subject cruise ship, RCCL conducted a live presentation to passengers, during which RCCL discussed all of the excursion options available to passengers during the cruise.  The subject excursion was among the excursions discussed at the presentation.

28. RCCL also had promotional materials at its shore excursion desk aboard the cruise ship and/or other areas of the ship with information and descriptions of shore excursions, including the subject excursion.  Tickets for shore excursions, including the subject excursion, were also available for sale on RCCL's shore excursion desk aboard the cruise ship.

29. The information and/or material RCCL made available and/or distributed to the Plaintiffs represented that the excursions offered by RCCL, including the subject excursion, were safe. RCCL and/or its crewmembers also advised its passengers, including the Plaintiffs, that they not engage in excursions, tours or activities that were not selected and sold by RCCL.  In fact, RCCL's website listed RCCL's "expertise" as one of the "top reasons" to book "our [RCCL'S] excursions." In addition, RCCL's promotional material and information concerning excursions represented that RCCL's "excursions are planned by insured partners who adhere to the highest safety standards in the industry." RCCL's promotional material and information concerning excursions further

represented that transportation to the excursions locations and back to the vessel was included in the tickets sold by RCCL.

30. Relying on the safety and reputability of the excursions offered by RCCL, including the subject excursion, the Plaintiffs purchased tickets for the subject excursion directly from RCCL. The Plaintiffs obtained all of the information regarding the subject excursion from RCCL and made all of the reservation arrangements for the subject excursion exclusively with RCCL.  In turn, RCCL received a portion of the Plaintiffs' ticket price for the subject excursion.

31. The Plaintiffs reviewed RCCL's presentations of information concerning the subject excursion in Jamaica and relied upon RCCL's presentations exclusively and to Plaintiffs' detriment in deciding to purchase the subject excursion from RCCL and to participate in same during the Plaintiffs' cruise aboard the *Independence of the Seas*.

32. Based upon RCCL's presentations of information concerning the subject excursion in Jamaica, the Plaintiffs reasonably understood that RCCL conducted regular inspections of the excursion, including the transportation for the excursion and the operators of the subject excursion in Jamaica, to ensure that they were reasonably safe, and the Plaintiffs relied upon such understanding to Plaintiffs' detriment in deciding to purchase the subject excursion from RCCL and to participate in same during Plaintiffs' cruise aboard the *Independence of the Seas*.

33. On or about January 14, 2016, as part of Plaintiffs' cruise aboard the *Independence of the Seas*, the Plaintiffs participated in the excursion in Jamaica.

34. Unbeknownst to the Plaintiffs at the time of the subject incident, the excursion was operated by the Excursion Entities.

35. Passengers participating in the subject excursion, including the Plaintiffs, were driven to the excursion in a bus operated by a driver for the Excursion Entities, and they were driven back

to the vessel in the same bus by the same driver.  This transportation was part of the excursion sold by RCCL.

36. On both the journey to and from the vessel, the driver was speeding, driving erratically, and changing lanes frequently.  Although passengers requested that the driver slow down, the driver ignored the requests.

37. In addition to the driver, a tour guide for the Excursion Entities was also on the bus with the passengers, including the Plaintiffs.  The tour guide assured all of the passengers that they were not in danger and that the bus driver was driving the way he normally drove and/or the way everyone typically drove in Jamaica.

38. On the way back to the vessel, the bus was traveling on a two-lane road with oncoming traffic.  The bus was approaching a curve with limited visibility.  It is common practice for drivers in Jamaica to pass other cars on curves, even with limited visibility.  Nevertheless, the driver, who was speeding, did not slow down or take any other precautions.

39. While they were on the curve, a large truck was driving in the opposite direction as the bus. The truck began to pass another vehicle and, in doing so, began driving on the same lane as the bus, heading straight toward the bus.  The bus driver, who was speeding, reacted slowly and attempted to swerve toward the side of the road when it was too late.  As a result, the bus was broadsided by the truck and repeatedly flipped over, causing the Plaintiffs to suffer severe and permanent injuries.

40. The bus driver transporting the Plaintiffs on RCCL's excursion was unqualified, unfit and/or not competent to drive the bus.

41. The bus used to transport passengers was unsafe and inappropriate due to the seat belts and/or lack thereof.  Specifically, if the bus was equipped with seat belts, the seat belts had fallen

off, were hidden/obscured, and/or were located completely underneath or between the seat cushions so that they were not visible and/or accessible. The Excursion Entities never advised the passengers that seat belts were available; they never instructed the passengers as to how to locate the hidden seat belts; and/or they never advised the passengers that seat belts should be worn at all times.

42. The foregoing conditions of the excursion (including, but not limited to, the driver and the bus) were unreasonably hazardous and should have been discovered by RCCL had it conducted an inspection of the subject excursion, including an inspection of the excursion's operators and/or their employees and the transportation used for the excursion, to ensure that the excursion was reasonably safe prior to repeatedly recommending the excursion to its passengers, including the Plaintiffs, to the exclusion of other excursions not offered by RCCL.

43. Prior to the subject incident, RCCL was or should have been on notice that the excursion was not reasonably safe for passengers. This notice was or should have been acquired through RCCL's initial approval process and/or its yearly inspections of the subject excursion.

44. Specifically, before offering excursions to passengers, the excursions and/or the excursion operators are subject to RCCL's approval pursuant to policies and procedures promulgated by RCCL. This is a duty undertaken by RCCL, in part, so that it may make the aforementioned representations concerning the subject excursion to its passengers in an effort to generate a profit for RCCL. Accordingly, RCCL is required to execute this duty with reasonable care under the circumstances. During the excursion approval process, RCCL is supposed to verify whether the operator is qualified. The excursion operators also provide RCCL details pertaining to the excursion, including, but not limited to, the location, a description, restrictions, participation levels for the excursion, and/or the type of transportation used for the excursion. Part of the approval

process also entails RCCL's representatives inspecting the excursion being proposed, including the physical facilities, equipment, operations, and transportation.  Accordingly, taking the subject excursion did or should have revealed the Excursion Entities' unqualified, incompetent and/or unfit employees (e.g., the driver) and/or their hazardous bus with hidden, unavailable and/or defective seat belts, and/or their insufficient and/or inadequate policies and procedures and/or instruction for passengers.

45. Moreover, once an excursion is approved and accepted by RCCL, RCCL sends excursion operators standards, policies, and/or procedures that the operators must adhere to while RCCL is offering their excursions to its passengers.  Additionally, the excursion operators are subject to yearly inspections and/or approval by RCCL, wherein RCCL is supposed to conduct site inspections of the excursion, including the vessels and/or other transportation used for the excursion, as well as the equipment and/or operations of the excursion.  The yearly inspections and/or approval process also requires excursion operators to submit yearly "bids" and/or reports to RCCL, wherein the operators disclose the details of incidents that occurred during the excursion involving cruise line passengers (among other information).  Therefore, prior to the Plaintiffs' incident, RCCL was or should have been on notice that cruise ship passengers were injured while being transported to and/or from excursions in Jamaica, including the subject excursion and/or other excursions operated by the Excursion Entities.  Further, RCCL's yearly inspections and/or approval, including taking the subject excursion, did or should have revealed the Excursion Entities' the unsafe manner in which their drivers operated the transportation used for the excursion and/or their hazardous bus with hidden, unavailable and/or defective seat belts, and/or their insufficient and/or inadequate instruction for passengers concerning seat belts.

46. The information and/or material RCCL made available and/or distributed to passengers concerning shore excursions, including the Plaintiffs concerning the subject excursion, was based on the description and/or information provided to RCCL by the Excursion Entities and/or by RCCL's inspections and/or approval of the subject excursion and/or of the Excursion Entities. Accordingly, Defendants undertook a duty to accurately advise passengers, including the Plaintiffs, concerning the subject excursion in order to obtain a profit for Defendants, and Defendants were required to execute that duty utilizing reasonable care under the circumstances.

47. Defendants knew or should have known that the driver was not qualified or competent to drive the bus; that the seat belts on the bus were concealed and were inaccessible and that neither the driver nor tour guide advised passengers that seat belts were present and/or should be worn. Defendants failed to take reasonable steps to address the dangers and/or warn passengers (including the Plaintiffs) of the dangers.

### FACTS CONCERNING THE RELATIONSHIP/ARRANGEMENT BETWEEN RCCL AND THE EXCURSION ENTITIES

48. At all times material hereto, the Excursion Entities were the agents and/or apparent agents of RCCL by virtue of the following, such that RCCL is estopped from denying that the Excursion Entities were the agents and/or apparent agents of RCCL:

a.  RCCL made all arrangements for the subject excursion without disclosing to Plaintiffs that the subject excursion was being run by another entity (and/or entities); and/or

b.  RCCL marketed the subject excursion using its company logo on its website and/or in its brochures and/or on its ship without disclosing to Plaintiffs that the subject excursion was being run by another entity (and/or entities); and/or

c.  RCCL maintained an excursion desk on its ship whereby it offered, sold, provided information to, and answered questions of passengers about the subject excursion

without disclosing to Plaintiffs that the subject excursion was being run by another entity (and/or entities); and/or

d.  RCCL recommended its passengers to not engage in excursions, tours and/or activities that are not sold through RCCL; and/or

e.  Until the point that Plaintiffs actually participated in the subject excursion, the Plaintiffs' exclusive contacts concerning the subject excursion was with RCCL and/or RCCL's onboard excursion desk; and/or

f.  The fee for the subject excursion was charged to the Plaintiffs, and collected from the Plaintiffs, exclusively by RCCL; and/or

g.  Plaintiffs received the receipt for the purchase of the subject excursion exclusively from RCCL.

49. At all times material hereto, Plaintiffs relied on the above, to Plaintiffs' detriment, so as to believe that the Excursion Entities were the employee(s) and/or agent(s) of RCCL, in choosing the subject excursion.  At no time did RCCL represent to Plaintiffs in particular, or the ship's passengers in general, in a meaningful way that the Excursion Entities were not agent(s) and/or employee(s) of RCCL.

50. At all times material hereto, RCCL was the owner or co-owner of the subject excursion. At all times material hereto, RCCL was responsible for, and liable for, the actions of the Excursion Entities with respect to the subject excursion.

51. In the alternative, at all times material hereto, a partnership and/or joint venture existed between the Excursion Entities by virtue of the following, whereby RCCL and the Excursion Entities are jointly and severally responsible for the negligence of each other as partners of the partnership and/or joint venture:

a.   RCCL and the Excursion Entities entered into an agreement whereby: RCCL made all arrangements for the Plaintiffs, on behalf of the partnership with the Excursion Entities, for the subject excursion being run by the Excursion Entities; and/or

b.   RCCL marketed on RCCL's website and/or in its brochures and/or on its ship, on behalf of the partnership with the Excursion Entities, the subject excursion being run by the Excursion Entities; and/or

c.   RCCL maintained an excursion desk on its ship where it offered, sold, provided information to, and answered questions of passengers, on behalf of the partnership with the Excursion Entities, about the subject excursion being run by the Excursion Entities; and/or

d.   The Excursion Entities provided the equipment to be used in the subject excursion; and/or

e.   RCCL determined the amount of money charged for the subject excursion being run by the Excursion Entities; and/or

f.   RCCL collected the amount of money charged for the subject excursion being run by the Excursion Entities; and/or

g.   RCCL shared profits with the Excursion Entities for the subject excursion by retaining a portion of the ticket sales for the subject excursion after the tickets were sold, and paying the Excursion Entities the remaining portion of the ticket sales for the subject excursion; and/or

h.   RCCL shared losses with the Excursion Entities for the subject excursion, including, for instance, when RCCL issued a refund to passengers for the Excursion Entities' excursion(s), including, but not limited to, the subject excursion.

52. At all times material hereto, RCCL was a partner in the subject excursion.

53. At all times material hereto, the Excursion Entities owned and operated the subject excursion. The Excursion Entities were involved in providing the subject excursion to the Plaintiffs. At all times material hereto, the Excursion Entities were the agent(s), apparent agent(s), joint venturer(s), servant(s), and/or employee(s) of RCCL and at all times acted within the course and scope of their agency, apparent agency, joint venture, service and/or employment.

## COUNT I
## NEGLIGENCE AGAINST RCCL

The Plaintiffs re-allege, adopt, and incorporate by reference the allegations in paragraphs one (1) through fifty-three (53) as though alleged originally herein.

54. At all times material hereto, it was the duty of RCCL to provide the Plaintiffs with reasonable care under the circumstances.

55. On or about January 14, 2016, RCCL and/or its agents, servants, joint venturers and/or employees breached its duty to provide the Plaintiffs with reasonable care under the circumstances.

56. On or about January 14, 2016, the Plaintiffs were injured due to the fault and/or negligence of RCCL, and/or its agents, servants, joint venturers and/or employees, for acts and/or omissions that include, but are not limited to, the following:

    a.  Failure to provide a safe excursion; and/or

    b.  Failure to provide reasonably safe transportation for Plaintiffs and other cruise passengers participating in the subject excursion; and/or

    c.  Failure to require the Excursion Entities to provide reasonably safe transportation for cruise ship passengers; and/or

    d.  Failure to provide a competent driver for the transportation used for the subject excursion; and/or

e.  Failure to require the Excursion Entities to provide a competent driver for the transportation used for the subject excursion; and/or

f.  Representing to the Plaintiffs that the subject excursion was inspected by RCCL and was reasonably safe under the circumstances, when in fact it was not; and/or

g.  Failure to adequately inspect and/or monitor excursion providers so as to ensure that the subject excursion was reasonably safe for cruise passengers and the Plaintiffs; and/or

h.  Failure to adequately inspect and/or monitor the subject excursion so as to ensure that the transportation used in the subject excursion was reasonably safe for Plaintiffs and cruise passengers; and/or

i.  Failure to adequately inspect and/or monitor the transportation used for the subject excursion so as to ensure that it was equipped with reasonably safe and/or sufficient seat belts; and/or

j.  Failure to adequately inspect and/or monitor the transportation for the subject excursion so as to ensure that it was reasonably safe for cruise ship passengers; and/or

k.  Failure to adequately inspect and/or monitor the subject excursion so as to ensure that the drivers used by the Excursion Entities (including, but not limited to, the driver on the date of the incident) were all reasonably safe for Plaintiffs and cruise passengers; and/or

l.  Failure to adequately inspect and/or monitor the subject excursion so as to ensure that the excursion participants were being adequately and/or properly instructed by the tour guides concerning safety procedures, including the use of seat belts; and/or

m.  Failure to adequately inspect and/or monitor the policies and procedures of the Excursion Entities to ensure that the transportation used for the subject excursion was regularly and adequately inspected and/or maintained; and/or

n.  Failure to promulgate and/or enforce adequate policies and procedures to ensure that the transportation used for the subject excursion was reasonably safe for cruise ship passengers; and/or

o.  Failure to promulgate and/or enforce adequate standards, policies, and/or procedures for the Excursion Entities to require all participants to wear seat belts; and/or

p.  Failure to promulgate and/or enforce adequate standards, policies, and/or procedures for the Excursion Entities to require that passengers are adequately and/or properly instructed as to the use of seat belts and/or how to locate the seat belts; and/or

q.  Failure to adequately warn passengers (including the Plaintiff) concerning the dangers associated with going on the subject excursion; and/or

r.  Failure to adequately warn passengers (including the Plaintiff) that RCCL does not inspect and/or maintain the transportation used for the subject excursion; and/or

s.  Failure to adequately warn passengers (including the Plaintiff) that RCCL does not verify that the transportation used for the subject excursion is reasonably safe, inspected, and/or maintained; and/or

t.  Failure to adequately warn passengers (including the Plaintiffs) concerning the dangerous and reckless driving habits in Jamaica and/or of the Excursion Entities' drivers and/or of the driver operating the excursion bus; and/or

u.  Failure to adequately warn passengers (including the Plaintiffs) concerning the dangerous design and/or condition of the excursion bus; and/or

v.  Failure to adequately warn passengers (including the Plaintiffs) concerning the unsafe practices and procedures of the Excursion Entities in not having and/or concealing the seat belts in the bus; and/or

w.  Failure to adequately warn passengers (including the Plaintiffs) concerning the dangerous situations, including hidden and unavailable seat belts, that could and/or would be encountered during the excursion; and/or

x.  Failure to adequately warn passengers (including the Plaintiffs) concerning Excursion Entities' failure to advise passengers to wear seat belts and/or instruct passengers on how to locate the seat belts.

57. All or some of the above acts and/or omissions by RCCL and/or its agents, servants, and/or employees, caused and/or contributed to the Plaintiffs being severely injured while participating in the subject excursion.

58. At all times material hereto, RCCL knew of the foregoing conditions causing the subject incident and did not correct them, or the conditions existed for a sufficient length of time so that RCCL, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them.  This knowledge was or should have been acquired through: (a) RCCL's initial approval process of the Excursion Entities and/or the excursion, including, but not limited to, having RCCL's representative(s) take the excursion; (b) RCCL's yearly inspections of the Excursion Entities and/or the excursion, including, but not limited to, conducting site inspections; and/or (c) prior incidents involving passengers injured while being transported to and/or from excursions in Jamaica, including the subject excursion and/or other excursions operated by the Excursion Entities that have been reported within the cruise industry.

59. As a direct and proximate result of the negligence of RCCL, the Plaintiffs were injured about Plaintiffs' bodies and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post-traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiffs' injuries, suffered physical handicaps, lost earnings and lost earning capacity both past and future. The injuries are permanent or continuing in nature and the Plaintiffs will suffer the losses and impairments in the future. In addition, the Plaintiffs lost the benefit of Plaintiffs' vacation, cruise, and transportation costs.

**WHEREFORE**, the Plaintiffs demand judgment for all damages recoverable under the law and demand trial by jury.

## COUNT II
## NEGLIGENCE AGAINST THE EXCURSION ENTITIES

The Plaintiffs re-allege, adopt, and incorporate by reference the allegations in paragraphs one (1) through fifty-three (53) as though alleged originally herein.

60. At all times material hereto, it was the duty of the Excursion Entities to provide the Plaintiffs with reasonable care under the circumstances.

61. On or about January 14, 2016, the Excursion Entities and/or their agents, servants, joint venturers and/or employees breached their duty to provide the Plaintiffs with reasonable care under the circumstances.

62. On or about January 14, 2016, the Plaintiffs were injured due to the fault and/or negligence of the Excursion Entities, and/or their agents, servants, joint venturers and/or employees, for acts and/or omissions that include, but are not limited to, the following:

    a.   Failure to provide a safe excursion; and/or

b.  Failure to provide reasonably safe transportation for Plaintiffs and other cruise passengers participating in the subject excursion; and/or

c.  Failure to ensure that the transportation used for the subject excursion was regularly and adequately inspected and/or maintained; and/or

d.  Failure to ensure that the transportation used for the subject excursion had reasonably safe and/or sufficient seat belts; and/or

e.  Failure to require all passengers to wear seat belts in the bus; and/or

f.  Failure to adequately and/or properly instruct passengers as to the use of seat belts; and/or

g.  Failure to adequately and/or properly instruct passengers as to how to locate the seat belts in the bus; and/or

h.  Failure to select a bus operator that utilized reasonably safe transportation for excursion participants and/or cruise passengers; and/or

i.  Failure to provide a competent driver for the transportation used for the subject excursion; and/or

j.  Failure to adequately train and/or supervise bus drivers (including, but not limited to, the driver on the date of the incident) to ensure that they complied with applicable traffic and/or safety laws and otherwise drove in a reasonably safe manner when transporting cruise ship passengers; and/or

k.  Failure to initially and/or periodically monitor the performance of the driver on the date of the incident to ensure that he was complying with applicable traffic and/or safety laws and was otherwise driving in a reasonably safe manner when transporting cruise ship passengers; and/or

l.  Failure to adequately inspect and/or monitor the transportation used for the subject excursion periodically to ensure that the transportation used for the subject excursion maintained reasonably safe and/or sufficient seat belts; and/or

m.  Failure to promulgate and/or enforce adequate standards, policies, and/or procedures to ensure that the transportation used for the subject excursion was reasonably safe for cruise ship passengers; and/or

n.  Failure to promulgate and/or enforce adequate standards, policies, and/or procedures to ensure that the transportation used for the subject excursion was regularly and adequately inspected and/or maintained; and/or

o.  Failure to promulgate and/or enforce adequate standards, policies, and/or procedures to ensure that the transportation used for the subject excursion maintained reasonably safe and/or sufficient seat belts; and/or

p.  Failure to promulgate and/or enforce adequate standards, policies, and/or procedures to ensure that the bus drivers complied with applicable traffic and/or safety laws, and otherwise drove in a reasonably safe manner when transporting cruise ship passengers; and/or

q.  Failure to promulgate and/or enforce adequate standards, policies, and/or procedures for tour guides and/or drivers to require all participants to wear seat belts; and/or

r.  Failure to promulgate and/or enforce adequate standards, policies, and/or procedures for the Excursion Entities to require that passengers are adequately and/or properly instructed as to the use of seat belts and/or how to locate the seat belts; and/or

s.  Failure to adequately warn passengers (including the Plaintiff) concerning the dangers associated with going on the subject excursion; and/or

t.   Failure to adequately warn passengers (including the Plaintiff) that RCCL does not inspect and/or maintain the transportation used for the subject excursion; and/or

u.   Failure to adequately warn passengers (including the Plaintiff) that RCCL does not verify that the transportation used for the subject excursion is reasonably safe, inspected, and/or maintained; and/or

v.   Failure to adequately warn passengers (including the Plaintiffs) concerning the dangerous and reckless driving habits in Jamaica and/or of the Excursion Entities' drivers and/or of the driver operating the excursion bus; and/or

w.   Failure to adequately warn passengers (including the Plaintiffs) concerning the dangerous design and/or condition of the excursion bus; and/or

x.   Failure to adequately warn passengers (including the Plaintiffs) concerning the unsafe practices and procedures of the Excursion Entities in not having and/or concealing the seat belts in the bus; and/or

y.   Failure to adequately warn passengers (including the Plaintiffs) concerning the dangerous situations, including hidden and unavailable seat belts, that could and/or would be encountered during the excursion; and/or

z.   Failure to adequately warn passengers (including the Plaintiffs) concerning Excursion Entities' failure to advise passengers to wear seat belts and/or instruct passengers on how to locate the seat belts.

63. All or some of the above acts and/or omissions by the Excursion Entities and/or their agents, servants, and/or employees, caused and/or contributed to the Plaintiffs being severely injured while participating in the subject excursion.

64. At all times material hereto, the Excursion Entities knew of the foregoing conditions causing the subject incident and did not correct them, or the conditions existed for a sufficient length of time so that the Excursion Entities, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them.  Insofar as it relates to conditions that the Excursion Entities did not create, this knowledge was or should have been acquired through: (a) the initial approval process of the Excursion Entities and/or the excursion, including, but not limited to, having representative(s) take the excursion; (b) the yearly inspections of the Excursion Entities and/or the excursion, including, but not limited to, conducting site inspections; and/or (c) prior incidents involving passengers injured while being transported to and/or from excursions in Jamaica, including the subject excursion and/or other excursions operated by the Excursion Entities that have been reported within the industry.

65. As a direct and proximate result of the negligence of the Excursion Entities, the Plaintiffs were injured about Plaintiffs' bodies and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post-traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiffs' injuries, suffered physical handicaps, lost earnings and lost earning capacity both past and future.  The injuries are permanent or continuing in nature and the Plaintiffs will suffer the losses and impairments in the future.  In addition, the Plaintiffs lost the benefit of Plaintiffs' vacation, cruise, and transportation costs.

**WHEREFORE**, the Plaintiffs demand judgment for all damages recoverable under the law and demand trial by jury.

## COUNT III
## NEGLIGENT HIRING AND/OR RETENTION AGAINST RCCL

The Plaintiffs re-allege, adopt, and incorporate by reference the allegations in paragraphs one (1) through fifty-three (53) as though alleged originally herein.

66. At all times material hereto, it was the duty of RCCL to provide the Plaintiffs with reasonable care under the circumstances.

67. At all times material hereto, RCCL had a duty to hire competent and/or fit excursion operators.

68. At all times material hereto, as part of its duty to hire competent and/or fit excursion operators, it was incumbent on RCCL to conduct an adequate review of the subject excursion operators to ascertain their competency and fitness.  Such a review includes adequate inspection(s) of their operations, the transportation for the excursion, and the operators of the subject excursion in Jamaica prior to hire.

69. On or about January 14, 2016, RCCL and/or its agents, servants, and/or employees breached its duty to provide the Plaintiffs with reasonable care under the circumstances by hiring and/or retaining the Excursion Entities, who were incompetent and/or unfit based on the following:

    a.  The failure of the Excursion Entities to provide a reasonably safe excursion; and/or

    b.  The failure of the Excursion Entities to provide reasonably safe transportation (including transportation with reasonably safe and/or sufficient seat belts) for Plaintiffs and other cruise passengers participating in the subject excursion; and/or

    c.  The failure of the Excursion Entities to provide a competent driver for the transportation used for the subject excursion, including a driver who complied with applicable traffic and/or safety laws and otherwise drove in a reasonably safe manner when transporting cruise ship passengers; and/or

    d.  The failure of the Excursion Entities to provide adequate instruction as to the use of seat belts; and/or

    e.  The failure of the Excursion Entities to provide adequate instruction on how to locate the seat belts; and/or

    f.  The failure of the Excursion Entities to require all passengers to wear seat belts in the bus.

70. At all times material hereto, RCCL knew of the foregoing conditions causing the Excursion Entities' incompetence and/or unfitness and did not correct them, or the conditions existed for a sufficient length of time so that RCCL, in the exercise of reasonable care under the circumstances, should have learned of them and corrected them.  This knowledge was or should have been acquired through: (a) RCCL's initial approval process of the Excursion Entities and/or the excursion, including, but not limited to, having RCCL's representative(s) take the excursion; (b) RCCL's yearly inspections of the Excursion Entities and/or the excursion, including, but not limited to, conducting site inspections; and/or (c) prior incidents involving passengers injured while being transported to and/or from excursions in Jamaica, including the subject excursion and/or other excursions operated by the Excursion Entities that have been reported within the cruise industry.

71. At all times material hereto, the Excursion Entities' incompetence and/or unfitness caused and/or contributed to the Plaintiffs being severely injured while participating in the subject excursion.

72. As a direct and proximate result of the negligence of RCCL and/or the Excursion Entities, the Plaintiffs were injured about Plaintiffs' bodies and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post-traumatic stress disorder and

other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiffs' injuries, suffered physical handicaps, lost earnings and lost earning capacity both past and future.  The injuries are permanent or continuing in nature and the Plaintiffs will suffer the losses and impairments in the future.  In addition, the Plaintiffs lost the benefit of Plaintiffs' vacation, cruise, and transportation costs.

**WHEREFORE**, the Plaintiffs demand judgment for all damages recoverable under the law and demand trial by jury.

## COUNT IV
## NEGLIGENCE AGAINST RCCL BASED ON
## APPARENT AGENCY OR AGENCY BY ESTOPPEL

The Plaintiffs re-allege, adopt, and incorporate by reference the allegations in paragraphs one (1) through fifty-three (53) as though alleged originally herein.

73. At all times material hereto, the Excursion Entities were the apparent agent(s) of RCCL.

74. At all times material hereto, RCCL is estopped to deny that the Excursion Entities were their agents or employees.

75. At all times material hereto, RCCL made manifestations which caused the Plaintiffs to believe that the Excursion Entities had authority to act for the benefit of RCCL. These manifestations included:

a. RCCL allowed its name to be utilized in connection with the advertising of the Excursion Entities; and/or

b. RCCL made all arrangements for the subject excursion without effectively disclosing to the Plaintiffs that the subject excursion was being run by another entity (and/or entities); and/or

c.  RCCL marketed the subject excursion using its company logo on its website and/or in its brochures and/or on its ship without effectively disclosing to the Plaintiffs that the subject excursion was being run by another entity (and/or entities); and/or

d.  RCCL maintained an excursion desk on its ship whereby it offered, sold, provided information to, and answered questions of passengers about the subject excursion without effectively disclosing to the Plaintiffs that the subject excursion was being run by another entity (and/or entities); and/or

e.  Until the point that Plaintiffs actually participated in the subject excursion, the Plaintiffs' exclusive contacts concerning the subject excursion was with RCCL; and/or

f.  RCCL recommended to Plaintiffs to not engage in excursions, tours or activities that are not sold by RCCL as RCCL has no familiarity with other tours or their operations; and/or

g.  The fee for the excursion was charged to the Plaintiffs, and collected from the Plaintiffs, exclusively by RCCL; and/or

h.  Plaintiffs received the receipt for the purchase of the subject excursion exclusively from RCCL.

76. Plaintiffs reasonably relied on the above, to Plaintiffs' detriment, so as to believe that the Excursion Entities were the employees and/or agents of RCCL in choosing the subject excursion.

77. It was reasonable to believe that the Excursion Entities were RCCL's employees and/or agents because the Plaintiffs booked, paid, and made all necessary arrangements for the subject excursion with RCCL.  RCCL's actions caused Plaintiffs to believe that the Excursion Entities had authority to act on RCCL's behalf.  At no time did the Excursion Entities represent to the ship's

passengers or the Plaintiffs in a meaningful way that the Excursion Entities were not agents or employees of RCCL.

78. Plaintiffs' reasonable reliance was detrimental because Plaintiffs would not have booked, paid for and/or participated in the subject excursion or incur any injuries had the Plaintiffs known that the subject excursion was not operated by RCCL.

79. At all times material hereto, RCCL breached its duty to provide reasonable care under the circumstances through the following acts and/or omissions of its apparent agents, the Excursion Entities:

a.  Failure to provide a safe excursion; and/or

b.  Failure to provide reasonably safe transportation for Plaintiffs and other cruise passengers participating in the subject excursion; and/or

c.  Failure to ensure that the transportation used for the subject excursion was regularly and adequately inspected and/or maintained; and/or

d.  Failure to ensure that the transportation used for the subject excursion had reasonably safe and/or sufficient seat belts; and/or

e.  Failure to require all passengers to wear seat belts in the bus; and/or

f.  Failure to adequately and/or properly instruct passengers as to the use of seat belts; and/or

g.  Failure to adequately and/or properly instruct passengers as to how to locate the seat belts in the bus; and/or

h.  Failure to select a bus operator that utilized reasonably safe transportation for excursion participants and/or cruise passengers; and/or

i.  Failure to provide a competent driver for the transportation used for the subject excursion; and/or

j.  Failure to adequately train and/or supervise bus drivers (including, but not limited to, the driver on the date of the incident) to ensure that they complied with applicable traffic and/or safety laws and otherwise drove in a reasonably safe manner when transporting cruise ship passengers; and/or

k.  Failure to initially and/or periodically monitor the performance of the driver on the date of the incident to ensure that he was complying with applicable traffic and/or safety laws and was otherwise driving in a reasonably safe manner when transporting cruise ship passengers; and/or

l.  Failure to adequately inspect and/or monitor the transportation used for the subject excursion periodically to ensure that the transportation used for the subject excursion maintained reasonably safe and/or sufficient seat belts; and/or

m.  Failure to promulgate and/or enforce adequate standards, policies, and/or procedures to ensure that the transportation used for the subject excursion was reasonably safe for cruise ship passengers; and/or

n.  Failure to promulgate and/or enforce adequate standards, policies, and/or procedures to ensure that the transportation used for the subject excursion was regularly and adequately inspected and/or maintained; and/or

o.  Failure to promulgate and/or enforce adequate standards, policies, and/or procedures to ensure that the transportation used for the subject excursion maintained reasonably safe and/or sufficient seat belts; and/or

LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.

p.  Failure to promulgate and/or enforce adequate standards, policies, and/or procedures to ensure that the bus drivers complied with applicable traffic and/or safety laws, and otherwise drove in a reasonably safe manner when transporting cruise ship passengers; and/or

q.  Failure to promulgate and/or enforce adequate standards, policies, and/or procedures for tour guides and/or drivers to require all participants to wear seat belts; and/or

r.  Failure to promulgate and/or enforce adequate standards, policies, and/or procedures for the Excursion Entities to require that passengers are adequately and/or properly instructed as to the use of seat belts and/or how to locate the seat belts; and/or

s.  Failure to adequately warn passengers (including the Plaintiff) concerning the dangers associated with going on the subject excursion; and/or

t.  Failure to adequately warn passengers (including the Plaintiff) that RCCL does not inspect and/or maintain the transportation used for the subject excursion; and/or

u.  Failure to adequately warn passengers (including the Plaintiff) that RCCL does not verify that the transportation used for the subject excursion is reasonably safe, inspected, and/or maintained; and/or

v.  Failure to adequately warn passengers (including the Plaintiffs) concerning the dangerous and reckless driving habits in Jamaica and/or of the Excursion Entities' drivers and/or of the driver operating the excursion bus; and/or

w.  Failure to adequately warn passengers (including the Plaintiffs) concerning the dangerous design and/or condition of the excursion bus; and/or

x.  Failure to adequately warn passengers (including the Plaintiffs) concerning the unsafe practices and procedures of the Excursion Entities in not having and/or concealing the seat belts in the bus; and/or

y.  Failure to adequately warn passengers (including the Plaintiffs) concerning the dangerous situations, including hidden and unavailable seat belts, that could and/or would be encountered during the excursion; and/or

z.  Failure to adequately warn passengers (including the Plaintiffs) concerning Excursion Entities' failure to advise passengers to wear seat belts and/or instruct passengers on how to locate the seat belts.

80. All or some of the above acts and/or omissions by RCCL and/or its apparent agents, the Excursion Entities, caused and/or contributed to the Plaintiffs being severely injured while participating in the subject excursion.

81. As a direct and proximate result of the negligence of RCCL and/or the Excursion Entities, the Plaintiffs were injured about Plaintiffs' bodies and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post-traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiffs' injuries, suffered physical handicaps, lost earnings and lost earning capacity both past and future.  The injuries are permanent or continuing in nature and the Plaintiffs will suffer the losses and impairments in the future.  In addition, the Plaintiffs lost the benefit of Plaintiffs' vacation, cruise, and transportation costs.

**WHEREFORE**, the Plaintiffs demand judgment for all damages recoverable under the law and demand trial by jury.

L I P C O N ,   M A R G U L I E S ,   A L S I N A   &   W I N K L E M A N ,   P . A .

## COUNT V
## NEGLIGENCE AGAINST RCCL BASED ON JOINT VENTURE
## BETWEEN RCCL AND THE EXCURSION ENTITIES

The Plaintiffs re-allege, adopt, and incorporate by reference the allegations in paragraphs one (1) through fifty-three (53) as though alleged originally herein.

82. At all times material hereto, RCCL and the Excursion Entities engaged in a joint venture to provide excursions to passengers aboard RCCL's ship(s).

83. At all times material hereto, RCCL and the Excursion Entities entered into an agreement where RCCL would sell the subject excursion to its passengers and the Excursion Entities would operate the subject excursion.

84. As its part of the joint venture, RCCL arranged for, sponsored, recommended, promoted, operated, marketed, sold and/or collected money for the subject excursion and the money was then shared between RCCL and the Excursion Entities. As its part of the joint venture, the Excursion Entities provided labor and/or operated the subject excursion.

85. RCCL, on behalf of the joint venture, charged a fee to passengers who utilized the excursions.  The fee paid by the passengers, including the Plaintiffs, was split between RCCL and the Excursion Entities, such that RCCL and the Excursion Entities shared a profit of the money made from the shore excursion.

86. At all times material hereto, RCCL and the Excursion Entities had joint and/or shared control over aspects of the joint venture.  The Excursion Entities had control over the day-to-day workings of the excursions. RCCL also had control over the day-to-day workings of the excursions in that they required the Excursion Entities to exercise reasonable care in the operation of the subject excursion. RCCL had control over the arrangements, marketing and sales of the excursion.

87. At all times material hereto, RCCL and the Excursion Entities shared a common purpose: to operate the subject excursion for a profit.

88. At all times material hereto, RCCL and the Excursion Entities had a joint proprietary and/or ownership interest in the subject excursion. RCCL had an interest in arranging, sponsoring, recommending, advertising, operating, and selling the subject excursion as well as collecting money for such excursion, and the Excursion Entities had a proprietary interest in the time and labor expended in operating the subject excursion.

89. At all times material hereto, RCCL and the Excursion Entities shared and/or had the right to share in the profits of the subject excursion, as RCCL retained a portion of the ticket sales for the subject excursion after the tickets were sold, and RCCL paid the Excursion Entities the remaining portion of the ticket sales for the subject excursion.

90. At all times material hereto, RCCL and the Excursion Entities shared losses that pay have been sustained with the subject excursion, including, for instance, when RCCL issued a refund to passengers for the Excursion Entities' excursion(s), including, but not limited to, the subject excursion.

91. RCCL and the Excursion Entities are jointly and severally responsible for each other's negligence as partners of the partnership and/or joint venture.

92. At all times material hereto, RCCL and the Excursion Entities therefore:

    a.  Had an intention to create a joint venture;

    b.  Had a joint proprietary interest in the subject matter of the venture;

    c.  Had mutual control and/or joint control over the subject matter of the venture with respect to the provision of excursions to passengers aboard the ship;

    d.  Had a right to share in the profits of the joint venture; and

LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.

e.  Would share losses which may have been sustained.

93. As joint venturers, RCCL and the Excursion Entities are liable for each other's negligence. RCCL is therefore liable for the negligent conduct of the Excursion Entities.

94. At all times material hereto, RCCL breached its duty to provide reasonable care under the circumstances through the following acts and/or omissions of its joint venturers, the Excursion Entities:

a.  Failure to provide a safe excursion; and/or

b.  Failure to provide reasonably safe transportation for Plaintiffs and other cruise passengers participating in the subject excursion; and/or

c.  Failure to ensure that the transportation used for the subject excursion was regularly and adequately inspected and/or maintained; and/or

d.  Failure to ensure that the transportation used for the subject excursion had reasonably safe and/or sufficient seat belts; and/or

e.  Failure to require all passengers to wear seat belts in the bus; and/or

f.  Failure to adequately and/or properly instruct passengers as to the use of seat belts; and/or

g.  Failure to adequately and/or properly instruct passengers as to how to locate the seat belts in the bus; and/or

h.  Failure to select a bus operator that utilized reasonably safe transportation for excursion participants and/or cruise passengers; and/or

i.  Failure to provide a competent driver for the transportation used for the subject excursion; and/or

j.  Failure to adequately train and/or supervise bus drivers (including, but not limited to, the driver on the date of the incident) to ensure that they complied with applicable traffic and/or safety laws and otherwise drove in a reasonably safe manner when transporting cruise ship passengers; and/or

k.  Failure to initially and/or periodically monitor the performance of the driver on the date of the incident to ensure that he was complying with applicable traffic and/or safety laws and was otherwise driving in a reasonably safe manner when transporting cruise ship passengers; and/or

l.  Failure to adequately inspect and/or monitor the transportation used for the subject excursion periodically to ensure that the transportation used for the subject excursion maintained reasonably safe and/or sufficient seat belts; and/or

m.  Failure to promulgate and/or enforce adequate standards, policies, and/or procedures to ensure that the transportation used for the subject excursion was reasonably safe for cruise ship passengers; and/or

n.  Failure to promulgate and/or enforce adequate standards, policies, and/or procedures to ensure that the transportation used for the subject excursion was regularly and adequately inspected and/or maintained; and/or

o.  Failure to promulgate and/or enforce adequate standards, policies, and/or procedures to ensure that the transportation used for the subject excursion maintained reasonably safe and/or sufficient seat belts; and/or

p.  Failure to promulgate and/or enforce adequate standards, policies, and/or procedures to ensure that the bus drivers complied with applicable traffic and/or safety laws, and

otherwise drove in a reasonably safe manner when transporting cruise ship passengers; and/or

q. Failure to promulgate and/or enforce adequate standards, policies, and/or procedures for tour guides and/or drivers to require all participants to wear seat belts; and/or

r. Failure to promulgate and/or enforce adequate standards, policies, and/or procedures for the Excursion Entities to require that passengers are adequately and/or properly instructed as to the use of seat belts and/or how to locate the seat belts; and/or

s. Failure to adequately warn passengers (including the Plaintiff) concerning the dangers associated with going on the subject excursion; and/or

t. Failure to adequately warn passengers (including the Plaintiff) that RCCL does not inspect and/or maintain the transportation used for the subject excursion; and/or

u. Failure to adequately warn passengers (including the Plaintiff) that RCCL does not verify that the transportation used for the subject excursion is reasonably safe, inspected, and/or maintained; and/or

v. Failure to adequately warn passengers (including the Plaintiffs) concerning the dangerous and reckless driving habits in Jamaica and/or of the Excursion Entities' drivers and/or of the driver operating the excursion bus; and/or

w. Failure to adequately warn passengers (including the Plaintiffs) concerning the dangerous design and/or condition of the excursion bus; and/or

x. Failure to adequately warn passengers (including the Plaintiffs) concerning the unsafe practices and procedures of the Excursion Entities in not having and/or concealing the seat belts in the bus; and/or

LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.

y.   Failure to adequately warn passengers (including the Plaintiffs) concerning the dangerous situations, including hidden and unavailable seat belts, that could and/or would be encountered during the excursion; and/or

z.   Failure to adequately warn passengers (including the Plaintiffs) concerning Excursion Entities' failure to advise passengers to wear seat belts and/or instruct passengers on how to locate the seat belts.

95. All or some of the above acts and/or omissions by RCCL and/or its joint venturers, the Excursion Entities, caused and/or contributed to the Plaintiffs being severely injured while participating in the subject excursion.

96. As a direct and proximate result of the negligence of RCCL and/or the Excursion Entities, the Plaintiffs were injured about Plaintiffs' bodies and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post-traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiffs' injuries, suffered physical handicaps, lost earnings and lost earning capacity both past and future.  The injuries are permanent or continuing in nature and the Plaintiffs will suffer the losses and impairments in the future.  In addition, the Plaintiffs lost the benefit of Plaintiffs' vacation, cruise, and transportation costs.

**WHEREFORE**, the Plaintiffs demand judgment for all damages recoverable under the law and demand trial by jury.

## COUNT VI
## THIRD-PARTY BENEFICIARY AGAINST RCCL

The Plaintiffs re-allege, adopt, and incorporate by reference the allegations in paragraphs one (1) through fifty-three (53) as though alleged originally herein.

97. RCCL and the Excursion Entities entered into a contract to provide the subject excursion for passengers aboard RCCL's ship(s).

98. RCCL and the Excursion Entities intended that the contract primarily and directly benefit RCCL's passengers, including the Plaintiffs.

99. The intent of RCCL and the Excursion Entities for the contract to benefit RCCL passengers, including the Plaintiffs, was expressed by RCCL and the Excursion Entities.

100. The intent of RCCL and the Excursion Entities for the contract to benefit RCCL passengers, including the Plaintiffs, was demonstrated by the provisions of the contract.  These provisions include, but are not limited to, the following: (a) the purpose of the agreement explicitly stating that it is for the Excursion Entities to provide shore excursions to guests on RCCL's vessels; (b) prohibiting dangerous activities from forming any part of shore excursions; (c) RCCL having the right to charge its passengers the price that RCCL determines in its sole discretion; (d) RCCL having the sole discretion to provide its passengers a full or partial reimbursement of the excursion ticket if a passenger is dissatisfied; (e) RCCL requiring that the Excursion Entities exercise reasonable care for the passengers' safety at all times; (f) RCCL requiring that the Excursion Entities satisfy and continue to satisfy the highest standards of quality in the industry; and/or (g) RCCL requiring that the Excursion Entity maintain insurance for any and all injuries to passengers.

101. This contract was breached by RCCL and/or the Excursion Entities for acts and/or omissions that include, but are not limited to, the following:

   a. As to RCCL:

      (1)   Failure to provide a safe excursion; and/or

      (2)   Failure to provide reasonably safe transportation for Plaintiffs and other cruise passengers participating in the subject excursion; and/or

(3)     Failure to require the Excursion Entities to provide reasonably safe transportation for cruise ship passengers; and/or

(4)     Failure to provide a competent driver for the transportation used for the subject excursion; and/or

(5)     Failure to require the Excursion Entities to provide a competent driver for the transportation used for the subject excursion; and/or

(6)     Representing to the Plaintiffs that the subject excursion was inspected by RCCL and was reasonably safe under the circumstances, when in fact it was not; and/or

(7)     Failure to adequately inspect and/or monitor excursion providers so as to ensure that the subject excursion was reasonably safe for cruise passengers and the Plaintiffs; and/or

(8)     Failure to adequately inspect and/or monitor the subject excursion so as to ensure that the transportation used in the subject excursion was reasonably safe for Plaintiffs and cruise passengers; and/or

(9)     Failure to adequately inspect and/or monitor the transportation used for the subject excursion so as to ensure that it was equipped with reasonably safe and/or sufficient seat belts; and/or

(10)    Failure to adequately inspect and/or monitor the transportation for the subject excursion so as to ensure that it was reasonably safe for cruise ship passengers; and/or

(11)    Failure to adequately inspect and/or monitor the subject excursion so as to ensure that the drivers used by the Excursion Entities (including, but not limited to, the

driver on the date of the incident) were all reasonably safe for Plaintiffs and cruise passengers; and/or

(12) Failure to adequately inspect and/or monitor the subject excursion so as to ensure that the excursion participants were being adequately and/or properly instructed by the tour guides concerning safety procedures, including the use of seat belts; and/or

(13) Failure to adequately inspect and/or monitor the policies and procedures of the Excursion Entities to ensure that the transportation used for the subject excursion was regularly and adequately inspected and/or maintained; and/or

(14) Failure to promulgate and/or enforce adequate policies and procedures to ensure that the transportation used for the subject excursion was reasonably safe for cruise ship passengers; and/or

(15) Failure to promulgate and/or enforce adequate standards, policies, and/or procedures for the Excursion Entities to require all participants to wear seat belts; and/or

(16) Failure to promulgate and/or enforce adequate standards, policies, and/or procedures for the Excursion Entities to require that passengers are adequately and/or properly instructed as to the use of seat belts and/or how to locate the seat belts; and/or

(17) Failure to adequately warn passengers (including the Plaintiff) concerning the dangers associated with going on the subject excursion; and/or

(18) Failure to adequately warn passengers (including the Plaintiff) that RCCL does not inspect and/or maintain the transportation used for the subject excursion; and/or

(19) Failure to adequately warn passengers (including the Plaintiff) that RCCL does not verify that the transportation used for the subject excursion is reasonably safe, inspected, and/or maintained; and/or

(20) Failure to adequately warn passengers (including the Plaintiffs) concerning the dangerous and reckless driving habits in Jamaica and/or of the Excursion Entities' drivers and/or of the driver operating the excursion bus; and/or

(21) Failure to adequately warn passengers (including the Plaintiffs) concerning the dangerous design and/or condition of the excursion bus; and/or

(22) Failure to adequately warn passengers (including the Plaintiffs) concerning the unsafe practices and procedures of the Excursion Entities in not having and/or concealing the seat belts in the bus; and/or

(23) Failure to adequately warn passengers (including the Plaintiffs) concerning the dangerous situations, including hidden and unavailable seat belts, that could and/or would be encountered during the excursion; and/or

(24) Failure to adequately warn passengers (including the Plaintiffs) concerning Excursion Entities' failure to advise passengers to wear seat belts and/or instruct passengers on how to locate the seat belts.

b. As to the Excursion Entities:

(1) Failure to provide a safe excursion; and/or

(2)     Failure to provide reasonably safe transportation for Plaintiffs and other cruise passengers participating in the subject excursion; and/or

(3)     Failure to ensure that the transportation used for the subject excursion was regularly and adequately inspected and/or maintained; and/or

(4)     Failure to ensure that the transportation used for the subject excursion had reasonably safe and/or sufficient seat belts; and/or

(5)     Failure to require all passengers to wear seat belts in the bus; and/or

(6)     Failure to adequately and/or properly instruct passengers as to the use of seat belts; and/or

(7)     Failure to adequately and/or properly instruct passengers as to how to locate the seat belts in the bus; and/or

(8)     Failure to select a bus operator that utilized reasonably safe transportation for excursion participants and/or cruise passengers; and/or

(9)     Failure to provide a competent driver for the transportation used for the subject excursion; and/or

(10)    Failure to adequately train and/or supervise bus drivers (including, but not limited to, the driver on the date of the incident) to ensure that they complied with applicable traffic and/or safety laws and otherwise drove in a reasonably safe manner when transporting cruise ship passengers; and/or

(11)    Failure to initially and/or periodically monitor the performance of the driver on the date of the incident to ensure that he was complying with applicable traffic and/or safety laws and was otherwise driving in a reasonably safe manner when transporting cruise ship passengers; and/or

LIPCON, MARGULIES, ALSINA & WINKLEMAN, P.A.

(12) Failure to adequately inspect and/or monitor the transportation used for the subject excursion periodically to ensure that the transportation used for the subject excursion maintained reasonably safe and/or sufficient seat belts; and/or

(13) Failure to promulgate and/or enforce adequate standards, policies, and/or procedures to ensure that the transportation used for the subject excursion was reasonably safe for cruise ship passengers; and/or

(14) Failure to promulgate and/or enforce adequate standards, policies, and/or procedures to ensure that the transportation used for the subject excursion was regularly and adequately inspected and/or maintained; and/or

(15) Failure to promulgate and/or enforce adequate standards, policies, and/or procedures to ensure that the transportation used for the subject excursion maintained reasonably safe and/or sufficient seat belts; and/or

(16) Failure to promulgate and/or enforce adequate standards, policies, and/or procedures to ensure that the bus drivers complied with applicable traffic and/or safety laws, and otherwise drove in a reasonably safe manner when transporting cruise ship passengers; and/or

(17) Failure to promulgate and/or enforce adequate standards, policies, and/or procedures for tour guides and/or drivers to require all participants to wear seat belts; and/or

(18) Failure to promulgate and/or enforce adequate standards, policies, and/or procedures for the Excursion Entities to require that passengers are adequately and/or properly instructed as to the use of seat belts and/or how to locate the seat belts; and/or

(19)   Failure to adequately warn passengers (including the Plaintiff) concerning the dangers associated with going on the subject excursion; and/or

(20)   Failure to adequately warn passengers (including the Plaintiff) that RCCL does not inspect and/or maintain the transportation used for the subject excursion; and/or

(21)   Failure to adequately warn passengers (including the Plaintiff) that RCCL does not verify that the transportation used for the subject excursion is reasonably safe, inspected, and/or maintained; and/or

(22)   Failure to adequately warn passengers (including the Plaintiffs) concerning the dangerous and reckless driving habits in Jamaica and/or of the Excursion Entities' drivers and/or of the driver operating the excursion bus; and/or

(23)   Failure to adequately warn passengers (including the Plaintiffs) concerning the dangerous design and/or condition of the excursion bus; and/or

(24)   Failure to adequately warn passengers (including the Plaintiffs) concerning the unsafe practices and procedures of the Excursion Entities in not having and/or concealing the seat belts in the bus; and/or

(25)   Failure to adequately warn passengers (including the Plaintiffs) concerning the dangerous situations, including hidden and unavailable seat belts, that could and/or would be encountered during the excursion; and/or

(26)   Failure to adequately warn passengers (including the Plaintiffs) concerning Excursion Entities' failure to advise passengers to wear seat belts and/or instruct passengers on how to locate the seat belts.

102. All or some of the above acts and/or omissions by RCCL and/or the Excursion Entities caused and/or contributed to the Plaintiffs being severely injured while participating in the subject excursion.

103. As a direct and proximate result of the negligence of RCCL and/or the Excursion Entities, the Plaintiffs were injured about Plaintiffs' bodies and extremities, suffered physical pain, mental anguish, loss of enjoyment of life, disability, disfigurement, post-traumatic stress disorder and other mental and/or nervous disorders, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of Plaintiffs' injuries, suffered physical handicaps, lost earnings and lost earning capacity both past and future. The injuries are permanent or continuing in nature and the Plaintiffs will suffer the losses and impairments in the future. In addition, the Plaintiffs lost the benefit of Plaintiffs' vacation, cruise, and transportation costs.

**WHEREFORE**, the Plaintiffs demand judgment for all damages recoverable under the law and demand trial by jury.

Respectfully submitted,

LIPCON, MARGULIES,
ALSINA & WINKLEMAN, P.A.
*Attorneys for Plaintiff*
One Biscayne Tower, Suite 1776
2 South Biscayne Boulevard
Miami, Florida 33131
Telephone No.: (305) 373-3016
Facsimile No.: (305) 373-6204

By: */s/ Michael A. Winkleman*
    **MICHAEL A. WINKLEMAN**
    Florida Bar No. 36719
    mwinkleman@lipcon.com
    **JACQUELINE GARCELL**
    Florida Bar No. 104358
    jgarcell@lipcon.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on December 9, 2016, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to electronically receive Notices of Electronic Filing.

By: *<u>/s/ Michael A. Winkleman</u>*
      **MICHAEL A. WINKLEMAN**